UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

CATHY MICHELLE LOCKE,

    Plaintiff,                      Civil Action No. 14-13907
                                             Honorable Denise Page Hood
    v.                              Magistrate Judge Elizabeth A. Stafford

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

    Defendant.
_____/

**REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT [R. 13, 16]**

Plaintiff Cathy Michelle Locke appeals a final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions, referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court finds that the administrative law judge's ("ALJ") decision is supported by substantial evidence, and thus **RECOMMENDS** that:

- the Commissioner's motion [R. 16] be **DENIED**;

- Locke's motion for summary judgment [R. 13] be **GRANTED IN**

**PART AND DENIED IN PART**; and

- the Commissioner's decision be **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Report and Recommendation.

I. **BACKGROUND**

   A. **Locke's Background and Disability Applications**

Born in November 1963, Locke was 48 years old when she submitted her applications for disability benefits in February 2012. [R. 11-2, Tr. 27; R. 11-6, Tr. 216]. She last worked as a real estate agent in June 2006. [R. 11-6, Tr. 234]. Locke alleged a disability onset date of October 1, 2006, claiming disability due to diabetes, polyneuropathy, cervical spine disease, chronic pain, cluster headaches, premature atrial contractions, and sleep apnea. [R. 11-2, Tr. 27; R. 11-6, Tr. 219, 265]

After both applications were denied initially, she requested a hearing, which took place on April 15, 2013 and included the testimony of Locke, her friend, Stephanie Jones, and a vocational expert ("VE"). [R. 11-2, Tr. 27, 41-112]. In a May 16, 2013 written decision, the ALJ found Locke to be not disabled. [*Id.*, Tr. 27-37]. The Appeals Council denied review, making

the ALJ's decision the final decision of the Commissioner, and Locke timely filed for judicial review. [*Id.*, Tr. 1-3; R. 1].

## B.   The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).[1] Second, if the claimant has not had a severe impairment or a combination of such impairments[2] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the

---

[1] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI respectively, list the same five-step analysis.
[2] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 1520(c); 920(c).

Commissioner considers its assessment of the claimant's residual functional capacity ("RFC"), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Locke was not disabled. At the first step, she found that Locke had not engaged in substantial gainful activity since her alleged onset date. [R. 11-2, Tr. 29]. At the second step, she found that Locke had the severe impairments of "diabetes mellitus with peripheral neuropathy and a history of ulcers; obstructive sleep apnea; cluster headaches; and degenerative disc disease of the cervical and lumbar spines." [*Id.*]. Next, the ALJ concluded that none of Locke's impairments, either alone or in combination, met or medically equaled the severity of the listed impairments. [*Id.*, Tr. 30-31].

After the third step, the ALJ found that Locke had the RFC

> to perform light work … except [she] is able to perform work
> that involves occasional climbing of stairs, crouching, crawling,

4

> kneeling, and stooping/bending; she must avoid workplace hazards such as moving machinery, unprotected heights, and climbing of ladders; she is able to frequently but not constantly use her bilateral upper extremities for gross and fine manipulation; and she is able to frequently but not constantly use her bilateral lower extremities to operate foot controls. In addition, [she] is limited to low stress work, meaning self-paced, that is unskilled and requires little or no judgment and be easily learned in 30 days.

[*Id.*, Tr. 31]. At step four, the ALJ found that Locke could not perform past relevant work. [*Id.*, Tr. 35]. After considering Locke's age, education, work experience, RFC, and the testimony of the VE, the ALJ found at step five that Locke can perform the position of office helper, of which a significant number of jobs exist in the economy. [*Id.*, Tr. 36-37].

## II. ANALYSIS

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the

5

evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

The significant deference accorded the Commissioner's decision is conditioned on the ALJ's adherence to governing standards. "Chief among these is the rule that the ALJ must consider all evidence in the record when making a determination, including all objective medical evidence, medical signs, and laboratory findings." *Gentry*, 741 F.3d at 723. *See also Rogers*, 486 F.3d at 249. In other words, substantial evidence cannot be based upon fragments of the evidence, and "must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal quotation marks and citation omitted).

The Commissioner must also adhere to its own procedures, but failure to do so constitutes only harmless error unless the claimant has been prejudiced or deprived of substantial rights. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). An ALJ's failure to use an "adjudicatory tool" that does not change the outcome of the decision is harmless. *Id.* at 655-56. On the other hand, substantial errors like ignoring evidence in the record or failing to follow the treating physician rule are not

6

harmless. *Id.*; *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011); *Gentry*, 741 F.3d at 729.

Locke argues that the record provides insufficient support for the ALJ's conclusions and that the ALJ erred in failing to obtain a psychological functional capacity assessment from a mental health professional. The Court agrees that substantial evidence does not support the ALJ's assessment of Locke's exertional RFC, but that her argument regarding the assessment of her mental RFC lacks merit.

### A. The ALJ's Unclear Path of Reasoning

In *Lowery v. Comm'r, Soc. Sec. Admin.*, 55 F. App'x 333, 339 (6th Cir. 2003), the ALJ's decision was found to lack the support of substantial evidence because lay testimony as a whole was mischaracterized. "The ALJ may not take part of a witness's testimony and disregard the rest." *Id.* The court emphasized that substantial evidence is based upon the record as a whole; "an ALJ may not select and discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Id.* (citation and internal quotation marks omitted). *See also Bailey v. Comm'r of Soc. Sec.*, 173 F.3d 428 (6th Cir. 1999) ("To be

7

entitled to substantial deference, however, agency rulings must clearly articulate the rationale underlying the decision.").

The same deficiencies cited in *Lowery* undermine the ALJ's decision in this case. Specifically, the ALJ mischaracterized Locke's testimony as a whole and her unclear path of reasoning in assessing Locke's physical RFC precludes meaningful appellate review.

By finding that Locke had the RFC for light work, the ALJ determined that she was able to lift up to 20 pounds, lift or carry up to 10 pounds frequently, and do a good deal of walking or standing. 20 C.F.R. § 404.1567(b). The ALJ based that decision in part on Locke's daily activities, saying that Locke's function report indicated:

> [S]he was able to take care of her personal needs, prepare meals, take care of her home, visit others, go out to eat, take short trips/rides, take care of pets, go outside daily, drive, shop, and perform household chores such as dishes, washing floors, household repairs, cleaning the bathroom, mowing, lawn care, shoveling, taking out the trash, and cleaning the kitchen.

[R. 11-2, Tr. 35 (citing which R. 11-6, Tr. 246-53)]. If this were an accurate description of Locke's statements and testimony as a whole, the ALJ would have a substantial basis to conclude that Locke's daily activities "strongly suggest that she is able to ambulate effectively and perform fine and gross

movements effectively." [R. 11-2, Tr. 31]. However, when looking at the record as a whole, this assessment lacks substantial evidence.

Locke was asked on the function report what house and yard work she was able to do, and she responded, "[D]ishes, washing floors, household repairs, clean bathroom, mowing, lawn care, shoveling, taking out trash, cleaning kitchen." [R. 11-6, Tr. 248]. However, within that same function report, other statements contradicted that she was capable of performing those tasks. Locke reported that her neighbor takes out her trash and helps with cleaning yard waste and basic house care, including doing her dishes, floors, kitchen and bath, and that she pays for yard work. [*Id.,* Tr. 247-48, 250]. Locke stated that she does as much as she can tolerate and that every day is different. [*Id.*, Tr. 247, 250]. The ALJ did not question Locke regarding the inconsistencies within her function report but instead appeared to rely upon the answer in the function report that presented the rosiest picture. This Court wonders whether Locke misunderstood that the question she was answering.

Other answers within the function report and from Locke's testimony differ from the ALJ's description of Locke's daily activities. While the ALJ states that Locke takes care of her pets, Locke reported that she feeds

9

them and lets them out, but depends upon her mother to help with vet visits and grooming. [R. 11-6, Tr. 247]. Contrary to the ALJ's representation that Locke prepares meals for herself, Locke stated that making meals is too hard for her because of her difficulty with standing or sitting, so she makes sandwiches or heats frozen food or meals that her daughter brings. [R. 11-6, Tr. 248; R. 11-2, Tr. 69]. Her daughter also does her laundry because she cannot do it. [R. 11-2, Tr. 51 & 69]. As far as Locke taking care of her personal needs, she stated in her April 10, 2012 that she takes quick showers or baths, only wears Croc shoes because she has too much pain otherwise and does not do anything to her hair except wash and dry it. [R. 11-6, Tr. 247]. By the April 2013 hearing, Locke stated that she could no longer shower because of the standing. [R. 11-2, Tr. 69]. In both her function report and her testimony, Locke described her daily routine as mostly laying down because she cannot sit or stand for long. [*Id.*, Tr. 69-70, 82-83; R. 11-6, Tr. 146]. Locke further described her loss of manual dexterity as precluding her from painting and crafts, and stated that she tries to avoid driving or writing because those activities exacerbate the sharp pains in her hands. [R. 11-2, Tr. 85-86; R. 11-6, Tr. 250]. She stated

that lifting her 17 or 18 pound grandson causes her pain, requiring her to go to bed afterwards. [R. 11-2, Tr. 68, 75-76].

Locke's friend of seven years testified that she provides care for Locke's dogs, helps her with laundry, and assists her with opening plastic pop bottles and the like; that Locke is incapable of basic house care, cleaning or cooking; and that Locke has difficulty walking, is easily tired and becomes clumsy. [*Id.*, Tr. 90-94].

Thus, the whole record regarding Locke's daily activities does not "strongly suggest that she is able to ambulate effectively and perform fine and gross movements effectively," as alleged by the ALJ. [R. 11-2, Tr. 31]. Her reported daily activities do not support the ALJ determination that she was able to lift up to 20 pounds and lift or carry up to 10 pounds frequently and do a good deal of walking or standing. § 404.1567(b).

Nor do the opinions of the medical sources support a conclusion that Locke can perform light work. On February 2, 2012, treating physician Mark Zohoury, D.O. signed a prescription note in which he concluded that Locke

11

was "unable to perform work of any kind" due to "total disability."[3] [R. 11-7, Tr. 402]. In a cervical spine medical source statement dated March 14, 2013, Dr. Zohoury opined that Locke was incapable of performing even low stress work due to diabetes neuropathy, spinal arthropathy, cluster headaches, anxiety, depression, chronic pain, chronic dizziness, and medication side effects. [*Id.*, Tr. 389-94]. He indicated that Locke's impairments caused muscle weakness, chronic fatigue, sensory loss, impaired sleep, lack of coordination, reduced grip strength, reduced ranges of motion, and numerous functional limitations. [*Id.*]. Dr. Zohoury opined that Locke could not walk a city block without rest or severe pain, she could only sit for 10 minutes at a time and stand for five minutes at a time; she could rarely lift 10 pounds or less than 10 pounds, never lift 20 pounds or heavier, rarely stoop, crouch, squat or climb stairs, and never climb ladders or twist; and she could sit for less than two hours in an eight hour workday, walk or stand for less than two hours in a workday, would need hourly breaks to lie down, and would be off task 25 percent of the workday. [*Id.*, Tr.

---

[3] The ALJ properly gave this opinion no weight because a finding of disability is reserved for the Commissioner. *Kidd v. Comm'r of Soc. Sec.*, 283 Fed. Appx. 336, 340 (6th Cir. 2008) ("[T]he ultimate issue of disability is reserved to the Commissioner.").

12

391-93]. The ALJ gave Dr. Zohoury's opinion "some weight."[4] [R. 11-2, Tr. 34].

Habib Gennaoui, M.D., a State agency consulting examiner, reported that Locke could not squat, kneel, or walk on her heels or toes, that she had mild tenderness and mild decreased range of motion in her cervical and lumbar spine with positive straight leg raise at 80 degrees, and that she had decreased bilateral hand grip 4/5 and decreased bilateral vibration sensation in both upper and lower extremities. [R. 11-7., Tr. 379-85]. He concluded that Locke was "suffering from multiple medical problems that are affecting her daily activity. The patient's activity is very limited to light housework with interruption." [*Id.,* Tr. 381]. The ALJ relied upon Locke's alleged activities of daily living to dismiss the relevance of the abnormalities Dr. Gennaoui identified from his examination. [R. 11-2, Tr. 35]. Further, despite those abnormal findings, the ALJ described Dr. Gennaoui's opinion as perhaps being "merely a recitation of the claimant's subjective statements," but

---

[4] An ALJ is ordinarily required to give controlling weight to the opinion of a treating physician, and must give good reasons for failing to do so. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013). Although Locke relies in part upon the treating physician rule to argue for reversal of the ALJ's decision, the Court does not believe reversal on that ground is the best approach because Dr. Zohoury's records are largely illegible, so it is difficult to determine the full bases for his opinion. [R. 11-7, Tr. 307-400].

nonetheless gave the opinion moderate weight. [*Id.*, Tr. 33-34].

A single decision maker had found Locke capable of light work with additional exertional limitations, but the ALJ gave that opinion no weight because it was not from a medical source. [*Id.,* Tr. 34].

Having given moderate weight to Dr. Gennaoui's opinion, some weight to Dr. Zohoury's opinion, and no weight to the single decision maker's opinion, the ALJ's assessment of an RFC that most resembles the single decision maker's opinion makes no sense. Neither of the opinions that the ALJ allegedly gave weight would support an RFC for the standing, walking or lifting required by light work, or for the frequent use of her upper or lower extremities. Dr. Gennaoui specifically stated that Locke could not kneel, yet the ALJ without explanation assessed an RFC requiring her to do so. Simply put, the Court cannot trace the ALJ's path of reasoning for her assessment of Locke's exertional RFC.

Given the ALJ's significant mischaracterizations of Locke's activities of daily living and opaque reasoning for her assessment of Locke's physical RFC, her decision is not supported by substantial evidence. *Lowery,* 55 F. App'x at 339; *Bailey,* 1999 WL 96920 at *4.

**B.     Psychological Case Review**

Citing 42 U.S.C. § 421(h), Locke argues that the ALJ erred by failing to obtain a psychological functional capacity assessment or a psychiatric case review from a mental health professional. However, the Sixth Circuit has explained that "no absolute duty exists under § 421(h) which requires the Commissioner or an ALJ to have a mental health professional complete [a psychological assessment]." *Lawson v. Chater*, 98 F.3d 1342, 1996 WL 577642, at *5 (6th Cir. Oct. 7, 1996) (citing *Andrade v. Sec'y of Health and Human Servs.*, 985 F.2d 1045, 1050 (10th Cir.1993); *Bernal v. Bowen*, 851 F.2d 297, 302 (10th Cir.1988)). Rather, the duty arises only "if the claimant brings forth sufficient evidence to raise an inference that he suffers from a mental impairment." *Marcum v. Comm'r, Soc. Sec. Admin.*, 205 F.3d 1341, 2000 WL 92262, at *4 (6th Cir. Jan. 18, 2000) (finding that "there was not sufficient evidence in the record to raise an inference that plaintiff suffered from a mental impairment" where plaintiff testified that depression affected his RFC, a single report noted "some depression" and he was prescribed medication to help him sleep).

Here, the record contains two references to possible mental impairments: a progress note by Dr. Zohoury indicating "anxiety/stress" related to a stress test and chest x-rays, and Dr. Zohoury's medical source

15

statement finding Locke had anxiety and depression and that she could not tolerate even low stress work. [R. 11-7, Tr. 351, 391, 393-94]. As the Commissioner points out, Locke "did not allege any mental impairment at the time she filed for disability [R. 11-6, Tr. 219], she did not treat for any mental impairment during the relevant period, her attorney did not include depression or anxiety on his list of current impairments in the pre-hearing brief [*id.*, Tr. 265], and Plaintiff did not discuss any depressive symptoms during the hearing [R. 11-2, Tr. 41-112]." [R. 16, PgID 484 (internal citations amended)]. This evidence is insufficient to raise an inference that Locke suffered from a mental impairment, so the ALJ was not required to order a psychological case review from a mental health professional.

### III. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Locke's motion for summary judgment [R. 13] be **GRANTED IN PART** to the extent that she seeks remand for a reassessment of her physical RFC, **DENIED IN PART** to the extent that she seeks reversal and a direct award of benefits, and that the Commissioner's motion [R. 16] be **DENIED**, and that the Commissioner's decision be **REVERSED** for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g).

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: February 9, 2016

## **NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after

service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 9, 2016.

>  s/Marlena Williams
>  MARLENA WILLIAMS
>  Case Manager